EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| María T. Malavé Serrano<br><br>Demandante Recurrida<br><br>v.<br><br>Oriental Bank & Trust<br><br>Demandado Peticionario | Certiorari<br><br>2006 TSPR 63<br><br>167 DPR \_\_\_\_ |

Número del Caso: CC-2004-573

Fecha: 20 de abril de 2006

Tribunal de Apelaciones:

> Región Judicial de Mayagüez

Juez Ponente:

> Hon. Yvonne Feliciano Acevedo

Abogado de la Parte Recurrida:

> Lcdo. Samuel Figueroa González

Abogados de la Parte Peticionaria

> Lcdo. José J. Santiago Meléndez
> Lcdo. Pedro Pumarada Surillo
> Lcdo. Carlos A. Padilla Vélez

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María T. Malavé Serrano

    Demandante Recurrida

        v.                      CC-2004-573

Oriental Bank & Trust

    Demandado Peticionario

PER CURIAM

San Juan, Puerto Rico, a 20 de abril de 2006.

Se nos solicita la revocación de una sentencia emitida por el Tribunal de Apelaciones. Mediante la sentencia recurrida, el foro intermedio apelativo modificó en parte la Sentencia dictada por el Tribunal de Primera Instancia y confirmó. Concluyó que no procedía el pago de la mesada por despido injustificado reclamado por la querellante de autos. Sostuvo que ésta no había sido objeto de un despido, como alegó, sino que había renunciado voluntariamente a su empleo. Redujo, además, la

partida concedida por el foro primario en concepto de salarios devengados y no satisfechos. No obstante, coincidió con el foro primario al determinar que la querellante de autos no podía ser considerada como "administrador" a los fines de ser exenta de las disposiciones de la Ley de Horas y Días de Trabajo por no concurrir todos los requisitos dispuestos en el Reglamento Número 13 de la Junta de Salario Mínimo[1]. De otra parte, confirmó la determinación del Tribunal de Primera Instancia respecto a la procedencia de intereses legales sobre las partidas concedidas por concepto de horas extras. Veamos los hechos que originan el presente recurso.

I

Oriental Bank & Trust, en adelante Oriental, es una institución bancaria que ofrece una variedad de productos financieros a la ciudadanía como préstamos hipotecarios de tipo convencional, veteranos y F.H.A.

La señora María Teresa Malavé Serrano trabajó para Oriental desde el 9 de noviembre de 1992 como Oficial de Mercadeo hasta el 3 de agosto de 2001. Como parte de sus responsabilidades en dicho puesto, la señora Malavé Serrano se encargaba de vender hipotecas e instrumentos de inversión. Su salario inicial en el referido puesto era de mil dólares ($1,000) mensuales, además de comisiones

---

[1] Reglamento 4267, Cuarta Revisión (1990).

pagaderas a base de los préstamos que vendiera. Un año y medio después de trabajar para Oriental, el título del puesto cambió a Ejecutivo de Cuentas ("Account Executive") y luego a Ejecutivo de Cuentas Hipotecarias ("Mortgage Account Executive"). Sus funciones en este puesto consistían en vender los diferentes productos hipotecarios de Oriental. Entre las tareas que realizaba estaban el hacer llamadas para ofrecer los servicios en general de Oriental, atender los clientes que acudían al banco (de los cuales el 80% eran "walk-ins"), entrevistarlos para conocer sus necesidades, identificar los productos que podían ofrecerse a éstos, verificar cuál de los productos se ajustaba al presupuesto del potencial cliente, solicitar la documentación necesaria, evaluar las deudas del cliente, tramitar estudios de título e informes de créditos y otras funciones dirigidas a procesar un préstamo.

El título de su puesto como "Mortgage Account Executive" fue cambiado a "Senior Mortgage Advisor". A pesar del cambio de nombre, sus funciones continuaron siendo las mismas, tanto bajo el puesto "Mortgage Account Executive" como bajo el puesto "Senior Mortgage Advisor". Para 1994, el sistema de pago de comisiones en Oriental también cambió. Bajo este nuevo esquema, los días quince (15) de cada mes, Oriental depositaba en la cuenta de la señora Malavé Serrano la cantidad de mil quinientos dólares ($1,500) en concepto de lo que el banco llamaba

"draw" o adelanto. Según surge del expediente ante nos, el exceso en producción de esos $1,500 se iba acumulando para pagarse cada seis (6) meses.[2]

El 3 de agosto de 2001, la señora Malavé Serrano renunció a su trabajo por, alegadamente, no haber recibido durante el año 2001 el exceso de comisiones. Alegó que su situación económica y familiar se vio afectada por la merma en sus ingresos, toda vez que no existía una relación justa y proporcionada entre el sistema de pago de Oriental y las responsabilidades asignadas.

El 5 de febrero de 2002, la señora Malavé Serrano presentó una reclamación judicial contra Oriental. La querella se instó bajo el procedimiento especial sumario que dispone la Ley Número 2 del 17 de octubre de 1967[3], en adelante, Ley Núm. 2. Reclamó la suma de $187,237.40 por concepto de horas extras trabajadas y no pagadas, más una cantidad igual como penalidad; $16,989.15 por concepto de vacaciones, más una cantidad igual como penalidad; $9,600 por concepto de indemnización por despido constructivo e injustificado; $400 por concepto de bono de navidad, más una cantidad igual como penalidad; y $37,000 por concepto de salarios dejados de devengar, más una cantidad igual como penalidad. Entre otras cosas, sostuvo que en varias

---

[2] Cabe destacar que el adelanto en comisión se determinaba de acuerdo a cada oficial, por lo que cada oficial podía tener un "draw" diferente.

[3] 32 L.P.R.A. secs. 3114-3133, según enmendada.

ocasiones, sin razón alguna, Oriental le redujo su salario a quinientos ($500) dólares mensuales.[4]

Oriental contestó oportunamente la referida querella, negando las alegaciones principales de la demanda. Respecto al pago de horas extras, alegó afirmativamente que la querellante de autos era una empleada exenta del pago de horas extras, de conformidad con las disposiciones de la Ley de Horas y Días de Trabajo[5], Ley de Salario Mínimo, Vacaciones y Licencia por Enfermedad[6], en adelante Ley de Salario Mínimo, y el Fair Labor Standards Act[7]. Sostuvo que la reclamación estaba total o parcialmente prescrita y que la señora Malavé Serrano no fue despedida de su empleo por Oriental, sino que renunció a su empleo voluntariamente.[8]

El 13 de agosto de 2002, Oriental presentó ante el Tribunal de Primera Instancia una "Solicitud de Desestimación Parcial"[9]. En síntesis, solicitó la desestimación de las partidas reclamadas en la querella en

---

[4] Querella, Apéndice del recurso de *Certiorari*, págs. 40-43.

[5] Ley Núm. 379 de 15 de mayo de 1948, 29 L.P.R.A. sec. 271 *et seq.*

[6] Ley Núm. 180 de 27 de julio de 1998, 29 L.P.R.A. sec. 250 *et seq.*

[7] 29 U.S.C.A. sec. 201, *et seq.*

[8] Contestación a la Querella, Apéndice del recurso de *Certiorari*, págs. 44-46.

[9] Íd., pág. 52.

concepto de salarios devengados previo al 3 de agosto de 1998, por estar prescritas.[10] La señora Malavé Serrano se allanó a la misma.

El 6 de febrero de 2002, Oriental presentó ante el foro primario una "Solicitud de Sentencia Sumaria". Solicitó la desestimación de las reclamaciones por horas extras y vacaciones, toda vez que, según alegó, la querellante de autos no tenía derecho a tales beneficios por ser una empleada exenta bajo la Ley de Horas y Días de Trabajo, *supra* y bajo la Ley de Salario Mínimo, *supra*. La señora Malavé Serrano presentó una "Réplica a solicitud de sentencia sumaria y moción de sentencia sumaria a favor de [sic] querellante".[11]

El 29 de mayo de 2003, el foro primario dictó sentencia sumaria declarando con lugar la querella incoada.[12] Tras analizar las funciones realizadas por la señora Malavé Serrano a la luz de la definición del término "administrador" provista en el Reglamento Núm. 13 de la Junta de Salario Mínimo, concluyó que ésta no podía ser considerada como administradora, a los efectos de estar exenta de los beneficios contemplados en la referida

[10] Sostuvo que la querellante había cesado en su trabajo el 3 de agosto de 2001 y en virtud de la Ley 180, *supra*, las reclamaciones de salarios solamente pueden retrotraerse a los últimos tres (3) años anteriores a la fecha de la cesantía.

[11] Apéndice del recurso de *Certiorari*, págs. 115-320.

[12] Íd., págs. 322-343.

legislación protectora. Entendió que las tareas de la querellante de autos no estaban relacionadas con la preparación de normas sobre la dirección de los negocios de Oriental ni con las operaciones generales de ésta. Añadió que el margen para el juicio propio y de adjudicación de casos era muy poco y que el ejercicio de la discreción era aun menor, pues otros aprobaban las normas de cualificación y la querellante no podía eximir de dichos requisitos a los solicitantes. Puntualizó que "[l]a llamada discreción del empleado, en términos prácticos, se materializaba en una fórmula de `te aprobarán el préstamo si cumples con todos los requisitos dispuestos en la reglamentación de Oriental´".[13] Concluyó que la querellante se vio forzada a renunciar debido a las actuaciones de su patrono, lo que constituye despido injustificado.[14] Ordenó el pago de $142,209.60 en concepto de horas extras, $26,000 en concepto de salarios dejados de percibir, $9,158.40 en concepto de vacaciones y $10,917.41 en concepto de mesada e intereses legales al 5.25%. Impuso, además, el pago de costas, gastos y honorarios de abogados. Copia de su notificación a las partes fue archivada en autos el 11 de agosto de 2003.

Inconforme, Oriental acudió al Tribunal de Apelaciones mediante recurso de *certiorari*. El 15 de abril de 2004,

---

[13] Íd., pág. 334.

[14] Íd., pág. 343.

el foro intermedio apelativo emitió una sentencia modificando la sentencia dictada por el foro primario. Específicamente, revocó la concesión de $10,917.41 por concepto de mesada por despido injustificado y redujo el monto de salarios dejados de percibir a $4,000, más la penalidad correspondiente. Así modificada, confirmó la Sentencia emitida por el Tribunal de Primera Instancia en todos los aspectos.

Ambas partes solicitaron al foro intermedio apelativo la reconsideración de su dictamen. Denegadas ambas solicitudes, Oriental acudió ante nos mediante recurso de *Certiorari*, señalando los errores siguientes:

> **Erró el foro apelativo, al confirmar que la demandante no reunía los requisitos para considerarse "administradora" y por ende, estar exenta de las leyes laborales.**
>
> **Erró el foro apelativo, al confirmar la imposición a Oriental del pago de determinadas sumas por concepto de horas extras y vacaciones, sin que se hubiese celebrado un juicio plenario y sin que la demandante presentara su prueba.**
>
> **Erró el foro apelativo, al confirmar que procede la imposición de intereses "post sentencia" al 5.25.**

Examinadas las comparecencias de las partes y los autos del presente caso, nos encontramos en posición de resolver.

II

A

Nos corresponde determinar si actuó correctamente el foro intermedio apelativo al confirmar la determinación del foro primario, de que la señora Malavé Serrano no reunía los requisitos para ser considerada como un "administrador". Veamos.

La Ley de Horas y Días de Trabajo, *supra*, establece la jornada de trabajo de los empleados a quienes les aplica y el derecho al cobro de horas extras por el trabajo realizado en exceso de dicha jornada diaria. No obstante, por mandato legislativo expreso, esta ley no incluye a los ejecutivos, administradores ni profesionales, según estos términos han sido definidos por la Junta de Salario Mínimo de Puerto Rico.[15]

Asimismo, la Ley de Salario Mínimo, *supra*, dispone expresamente que sus disposiciones no serán aplicables a los "`administradores´, `ejecutivos´ y `profesionales´, según dichos términos son definidos mediante el Reglamento Número 13 de la Junta de Salario Mínimo…".

De conformidad con la referida disposición, la Junta de Salario Mínimo promulgó el Reglamento Núm. 13, *supra*. El referido cuerpo reglamentario se estableció con el propósito de definir los referidos términos

---

[15] *Supra*, sec. 288(1). Véase, además, <u>Rolón v. Charlie Car Rental</u>, 148 D.P.R. 420 (1999).

"administrador", "ejecutivo" y "profesional". El Art. III del referido Reglamento, entonces vigente, definía el término administrador como:

> Cualquier empleado que reúna los siguientes requisitos:
> (a)    que desempeñe trabajos de oficina o trabajos fuera de oficina que no sean de naturaleza manual, estando el trabajo directamente relacionado con las normas de la dirección de la empresa o con las operaciones generales del negocio del patrono o de los clientes del patrono; y
>
> (b)    que usual y regularmente ejerza discreción y juicio independiente; y
>
> (c)    1. que regular y directamente ayude al dueño de la empresa, o a una persona empleada en la capacidad de "administrador" o de "ejecutivo", según estos términos se definen en el presente reglamento;                                o
> 2. que realice, solamente bajo supervisión general, trabajo de carácter técnico o especializado que requiera entrenamiento, experiencia o conocimientos especiales; o
> 3. que ejecute, solamente bajo supervisión general, encomiendas y        tareas especiales; y
>
> (d)    que no dedique más del 20%, o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40%, de las horas trabajadas en una semana de trabajo, a actividades que no estén directa o estrechamente relacionadas con el desempeño del trabajo descrito los Incisos (a), (b) y (c) de este Artículo III; y
>
> (e)    que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de doscientos dólares ($200), excluyendo alimentos, vivienda u otros servicios.
>
> (f)    También significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a) y

(b) de este Artículo III y reciba por sus servicios una compensación fija, o a base de por ciento u honorarios, equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295), excluyendo alimentos, vivienda u otros servicios.

Hemos resuelto que la determinación de si un empleado es o no un "administrador" dependerá de la concurrencia de todos los requisitos enumerados en la referida disposición reglamentaria.[16] La exclusión de un empleado de los beneficios reconocidos en la legislación laboral debe ser clara y debe interpretarse restrictivamente.[17] Al hacer dicha determinación, debemos analizar las funciones que efectivamente realiza cada empleado y no el título del puesto que ocupa.[18]

Del mismo modo, al evaluar si un empleado es o no un "administrador", según lo define el referido cuerpo reglamentario, es necesario que éste realice trabajo de una importancia sustancial para la dirección del negocio.[19] Hemos resuelto que la discreción y juicio independiente a

---

[16] Rolón v. Charlie Car Rental, *supra*, citando a Almodóvar v. Margo Farms del Caribe, Inc., 148 D.P.R. 103 (1999) y Medina Vega v. Unión de Obreros Cervecería, 86 D.P.R. 642 (1962).

[17] Rolón v. Charlie Car Rental, *supra*. Véase, además, López Santos v. Tribunal Superior, 99 D.P.R. 325 (1970).

[18] Íd.

[19] R. Delgado Zayas, Apuntes Para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño, Revisión del 2005, San Juan, Puerto Rico, Págs.34-38.

la que se refiere el Reglamento Núm. 13, *supra*, debe ser real y sustancial sobre asuntos de consecuencia.[20]

Al evaluar el expediente ante nos, resulta forzoso concluir que la señora Malavé Serrano no puede ser considerada como un "administrador". La señora Malavé Serrano atendía los clientes que llegaban a Oriental y les orientaba sobre las diferentes alternativas de préstamos hipotecarios que ofrecía el banco. Además, completaba el expediente del potencial cliente con la documentación necesaria, evaluaba sus deudas y realizaba otras funciones dirigidas a procesar el préstamo (como tramitar estudios de título e informes de crédito). La decisión de si un cliente cualificaba o no para determinado producto, se hacía a base de las políticas establecidas por Oriental, las leyes que regulan la banca y la información provista por el cliente. Es decir, como correctamente puntualizó el foro primario en su Sentencia, la señora Malavé Serrano no tenia autoridad ni discreción para no seguir la política y las guías del banco, por lo que la aprobación de un préstamo hipotecario quedaba principalmente en manos de la institución financiera en cuestión. A la luz de lo anterior, la señora Malavé incumple con el primer requisito del Reglamento para cualificarla como "administrador". El trabajo realizado por la señora Malavé Serrano no era uno de importancia sustancial para

---

[20] Rolón v. Charlie Car Rental, *supra*.

la dirección de Oriental. La señora Malavé Serrano tampoco reúne el segundo requisito para ser considerada una administradora. Esto es, no ejercía discreción y juicio independiente real y sustancial sobre asuntos de consecuencia para el banco. La aquí peticionaria, Oriental, arguye que la señora Malavé Serrano satisface este requisito porque tenía potestad para determinar si un cliente cualificaba o no para un préstamo y no era una mera "procesadora de datos". Arguye que era ella quien se relacionaba con los "realtors" y desarrolladores con el propósito de que le generaran negocios a Oriental y como resultado de ello, obtener ingresos. Sostiene que una vez ante el cliente, ella recopilaba toda su información personal y financiera, analizaba sus necesidades y, conforme a ello, le ofrecía aquel producto financiero que se ajustara a su realidad económica. Sostiene que era ella quien determinaba cuál producto le convenía al cliente entre la gama de productos de Oriental, por lo que ejercía discreción y juicio independiente real y sustancial.[21] No compartimos su criterio.

Aunque la señora Malavé Serrano evaluaba la información del potencial cliente y podía determinar, de entre los productos disponibles en Oriental, cuál era el que mejor se ajustaba a la realidad de éste, no podía cambiar ni flexibilizar el cumplimiento de los requisitos

_____

[21] Alegato de la parte Peticionaria, págs. 8-14.

establecidos por la entidad financiera para la aprobación final del préstamo.  Es decir, ésta no tenía discreción alguna para aprobar el préstamo si el cliente no cumplía con los requisitos establecidos por Oriental a esos fines. Como correctamente puntualizó el foro primario, "[l]a llamada discreción del empleado, en términos prácticos, se materializaba en una fórmula de `te aprobarán el préstamo si cumples con todos los requisitos dispuestos en la reglamentación de Oriental´".[22]    Adviértase que la discreción y juicio independiente que se exige debe ser real y sustancial sobre asuntos de consecuencia para la empresa.  Además, el hecho de que un trabajador realice alguna labor menor de tipo discrecional no lo convierte automáticamente en un "administrador". [23]

Las funciones realizadas por la señora Malavé Serrano no quedan enmarcadas en los requisitos reglamentarios para ser considerada "administradora".  Concluimos que la señora Malavé Serrano no cumplía con todos los requisitos reglamentarios para ser considerada como "administrador", por lo que actuó correctamente el foro intermedio apelativo al confirmar lo resuelto sobre esos extremos por el Tribunal de Primera Instancia.

---

[22] Apéndice del recurso de *Certiorari*, pág. 334.

[23] Rolón v. Charlie Car Rental, *supra*.

B

Oriental arguye que la sentencia sumaria dictada por el foro primario era improcedente pues, aún concluyendo que la señora Malavé Serrano no era una empleada exenta para fines de las leyes laborales, ésta venía obligada a desfilar prueba admisible en evidencia y establecer la procedencia de sus reclamos de salarios.  Veamos.

La sentencia sumaria es el mecanismo procesal que confiere al juzgador discreción para dictar sentencia sin necesidad de celebrar una vista evidenciaria.   El tribunal, en el ejercicio de su discreción, **puede dictarla sobre la totalidad de una reclamación o sobre cualquier controversia comprendida en ella**, cuando de los documentos admisibles en evidencia que se acompañan con la solicitud, o que obran en el expediente del tribunal, surge que no existe una legítima disputa de hechos que tenga que ser dirimida en vista evidenciaria y que sólo resta aplicar el derecho.[24]

En nuestro ordenamiento jurídico existe una clara política pública judicial de que los casos se ventilen en los méritos por nuestro interés de que todo litigante

---

[24] Regla 36 de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 36.  Véase además, García v. Darex P.R., Inc., 148 D.P.R. 364, 382 (1999) y Audiovisual Lang v. Sist. Est. Natal Hnos., 144 D.P.R. 563 (1997).

tenga su día en corte.[25]    Por ello, el mecanismo de sentencia sumaria sólo debe utilizarse cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba.[26]

En casos donde se reclama el pago de horas extras, hemos expresado que el peso de prueba lo tiene el empleado demandante o querellante.  Es éste quien tiene el deber de probar, mediante preponderancia de la prueba, no sólo que realizó una labor en exceso de la jornada ordinaria, sino también el número de horas extras por él trabajadas.[27]

En el presente caso, Oriental solicitó la desestimación de las reclamaciones hechas por la señora Malavé Serrano por horas extras y vacaciones por ser una empleada exenta, excluida de las disposiciones de la Ley de Horas y Días de Trabajo, *supra* y de la Ley de Salario Mínimo, *supra*.  La señora Malavé Serrano presentó la correspondiente réplica y una moción de sentencia sumaria a su favor. Posteriormente el foro primario dictó sentencia sumaria a

---

[25] Véase, entre otros, Rivera et al. v. Superior Pkg.,Inc. et al., 132 D.P.R. 115 (1992) y Lluch v. España Service Sta., 117 D.P.R. 729 (1986).

[26] Medina v. Merck, 134 D.P.R. 234 (1993).

[27] Rosario v. Autoridad de Tierras, 97 D.P.R. 324 (1969); Sierra v. Easter Sugar Associates, 71 D.P.R. 888 (1950).

favor de la señora Malavé Serrano resolviendo finalmente todas las reclamaciones instadas por ésta en su Querella.

Arguye Oriental que el foro primario abusó de su discreción al resolver sumariamente todas las reclamaciones porque lo que se le había planteado en la solicitud de sentencia sumaria era la controversia relativa a si Malavé Serrano era una empleada exenta o no. Sostiene que, de entender que no era una empleada exenta, procedía celebrar una vista evidenciaria para que Malavé presentara la prueba para sostener sus alegaciones y se le reconociera el derecho a Oriental a defenderse y presentar prueba a su favor.[28]

Adviértase que en su réplica a la solicitud de sentencia sumaria presentada por Oriental, la señora Malavé Serrano no sólo expresó las razones por las que no podía ser considerada administradora, sino que, además, expuso las razones por las que procedía dictar sentencia sumaria a su favor en todas las partidas reclamadas. En específico, sostuvo que la cantidad de horas trabajadas por ella, surgía de un documento titulado "Payroll Source Information". De conformidad con la nota al calce número 5 de la solicitud de sentencia sumaria presentada por la señora Malavé Serrano, dicho documento fue anejado a la referida solicitud.[29]

---

[28] Alegato de la Parte Peticionaria, págs. 18-25.

[29] Apéndice del recurso de *Certiorari*, pág. 117.

Al dictar sentencia sumaria a favor de la señora Malavé Serrano, el Tribunal de Primera Instancia formuló determinaciones de hecho respecto a la cantidad de horas trabajadas por ésta, de conformidad con la información que surgía del referido documento "Payroll Source of Information".[30]  Mas aún, en la nota al calce número 4 de su Sentencia, el foro primario puntualizó que "[n]o existe controversia alguna sobre las horas trabajadas por la querellante.  La única controversia es si la querellante es administrador, conforme lo define el Reglamento 13".[31]

El empleado tiene el peso de la prueba para demostrar, no sólo que realizó una labor en exceso de la jornada ordinaria, sino que también tiene que establecer el número de horas extras por él trabajadas[32].  El Tribunal de Primera Instancia entendió que la señora Malavé Serrano cumplió con dicho requisito evidenciario y estableció mediante preponderancia de la prueba su reclamación.  Por ello, correspondía a Oriental controvertir la razonabilidad de la prueba ofrecida por ésta.[33]

Oriental no se opuso a la referida solicitud de sentencia sumaria.  Un estudio cuidadoso del expediente

---

[30] Véase, pág. 5 de la Sentencia dictada por el Tribunal de Primera Instancia, Apéndice del recurso de *Certiorari*, pág. 326.

[31] Íd, pág.338.

[32] Rosario v. Autoridad de Tierras, *supra*; Sierra v. Easter Sugar Associates, *supra*.

[33] Véase, Sierra v. Eastern Sugar Associates, *supra*.

ante nos, demuestra que tampoco acompañó, como parte de su recurso de *certiorari*, copia del documento titulado "Payroll Source of Information". Como antes indicamos, el referido documento permitió que el foro primario hiciera una determinación de la cantidad de horas trabajadas por la señora Malavé Serrano y determinara que no existía controversia material y esencial de hechos al respecto. Por ello, no habremos de intervenir con lo actuado por el Tribunal de Primera Instancia. Tampoco podemos concluir que el referido foro abusó de su discreción al resolver el caso por la vía sumaria. Se trata de una determinación cobijada bajo la presunción de corrección de los procedimientos, que no fue rebatida por Oriental.

C

Finalmente, Oriental arguye que erró el foro intermedio apelativo al confirmar la imposición de intereses **post-sentencia** en casos como el presente. En apoyo de su posición, sostiene que las leyes laborales imponen al patrono que adeude salarios, el pago de una suma equivalente en concepto de penalidad. Afirma que cuando se ordena el pago de horas extras y vacaciones no procede la imposición de intereses, toda vez que el legislador determinó taxativamente cuál era la medida de daños en estos casos y no incluyó los intereses. Cita en apoyo de

su argumento lo resuelto por este Foro en Pan American World v. Tribunal Superior[34]. No le asiste la razón.

Sabido es que la Regla 44.3 de las Reglas de Procedimiento Civil[35], regula lo concerniente a la fijación de interés legal, tanto post sentencia como por temeridad. El interés **post sentencia** se refiere al tipo de interés que se impone a favor de la parte victoriosa en todas las sentencias que ordenen el pago de dinero. El mismo se computa sobre la cuantía de la sentencia, incluyendo costas y honorarios de abogado, y se fija desde la fecha en que dicte la sentencia hasta que se satisface la misma.[36] Su imposición es mandatario a toda parte perdidosa sin distinción alguna.[37]

En Pan American World v. Tribunal Superior, *supra*, resolvimos que en casos al amparo de la Ley de Horas y Días de Trabajo, *supra*, donde se reclama el pago de horas extras no procede la imposición de intereses **pre sentencia** toda vez que la indemnización concedida por dicha legislación es mucho más onerosa al imponer el pago adicional de una suma igual a la adeudada por concepto de

---

[34] 100 D.P.R. 413 (1972).

[35] 32 L.P.R.A., Ap. III, R. 44.3.

[36] Gutiérrez Calderón v. A.A.A., 2006 T.S.P.R. 21, 166 D.P.R. ____ (2006); Zequeira v. C.R.U.V., 95 D.P.R. 738 (1968).

[37] Gutiérrez Calderón v. A.A.A., *supra*, a la pág. 2, citando a Municipio de Mayagüez v. Rivera, 113 D.P.R. 467 (1982); P.R. Ame. Ins. Co. V. Tribunal Superior, 82 D.P.R. 621 (1962).

penalidad.    Nada expresamos allí con relación a los intereses **post sentencia**.

En el presente caso, el foro primario actuó correctamente al ordenar la imposición de intereses **posteriores** a la sentencia que ordenó el pago del dinero adeudado.   No existe prohibición alguna en las Reglas de Procedimiento Civil o en alguna ley que impida la imposición de intereses **post sentencia** en casos de reclamaciones de salarios por concepto de horas extras. Avalar la posición de Oriental, equivaldría a que la parte perdidosa dilate innecesariamente el cumplimiento de la sentencia, sin que tenga, por ello, consecuencia alguna.

III

Por los fundamentos antes expuestos se confirma la sentencia recurrida, emitida por el Tribunal de Apelaciones.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

María T. Malavé Serrano

    Demandante Recurrida

        v.                    CC-2004-573

Oriental Bank & Trust

    Demandado Peticionario

SENTENCIA

San Juan, Puerto Rico, a 20 de abril de 2006.

Por los fundamentos antes expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia recurrida, emitida por el Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Rodríguez Rodríguez disiente sin opinión escrita. El Juez Presidente señor Hernández Denton no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo